Our second and last case of this morning, No. 17-2287, Deemi v. Atty Gen, Mr. Volgemuth, and Braga, or Braga? Braga, okay. I screwed up two names already today. Just don't screw up your wife's name. If I get Mary Lou wrong, I'll know I'm in trouble. Take your time setting up. Good morning, Your Honors. May it please the Court, Steve Volgemuth on behalf of Petitioner Samuel Deemi. With the Court's permission, I'd like to reserve three minutes for rebuttal. You certainly may. In his opinion below, the BIA held that Mr. Deemi was ineligible to have his status adjusted to that of a lawful permanent resident. In reaching that conclusion, the BIA made three separate legal errors. The first and most fundamental of those errors was its holding that Mr. Deemi had been convicted of a crime involving moral turpitude, or CIMT. Can I just ask at the outset, just to clarify, a fact issue. You have a footnote on page six that indicates the perception that Mr. Deemi was not even an employee at the facility where this woman previously was in December of 08. Is that correct? That's correct. But yet he pled guilty to sexual assault. I believe he was he was actually convicted after a jury trial. OK, I'm sorry. My fault. He was actually convicted after a jury trial. And this argument, though, it's the trial record from Mr. Deemi's criminal trial, as it makes a part of the administrative record in this case, is pretty scant. But I think as a factual matter, Mr. Deemi's trial defense hinged on this issue of what was he employed at the relevant time. I think even the immigration judge found that Mr. Deemi was not providing care to the victim at the relevant at the relevant time. But he was deemed a per diem employee at that point. That's right. As I understand it, he was sort of on a list of people that could be called in an event of in the event someone was needed. But again, the evidence, I think, as I understand it, is that at the time, even as the immigration judge found he had not been providing services in February of 2009. When was the last time the records show he did provide services? I don't believe the record speaks to that issue, Your Honor. But I think it was December of 2008. As to the CMT issue, this issue is dispositive, Your Honor, in that if the court finds error here, there is no need for the court to to address the other two errors raised in Mr. Deemi's brief. Now, in our brief, we've set forth three separate factors that render Mr. Deemi's crime of conviction not a CIMT. But there is one fundamental issue that renders the BIA's analysis erroneous, and that is the BIA failed to recognize that a crime or statute of conviction cannot be a CIMT unless there is a mens rea element or a seantor element. This court has held that a seantor element is the touchstone or the hallmark of the CIMT analysis. The BIA itself, in a series of decisions, starting with Attorney General Mukasey's decision in the Silva Trevino case, has held that a corrupt seantor is one of the essential elements of the CIMT analysis. As to whether the New Jersey statute, if you're going to take a categorical approach, requires the offender to know that the victim is detained and under his supervisory or disciplinary power. I don't know of any New Jersey court that's ruled on that. You cite Spann and Martin, but they don't address mens rea. I agree with that, Your Honor. Under this court's categorical approach, this court looks at the elements of the statute in the statute of conviction and asks what is the least culpable conduct hypothetically necessary to sustain a conviction under those elements. Here, I think the court's analysis always starts with the statute of conviction. To the extent, I'm not saying the New Jersey case law, what little exists on this statute, simply doesn't speak to this issue. It doesn't suggest, though, that a culpable mental state or mens rea is required. It does suggest that the kinds of conduct that is contrary to accepted morality would be a problem. What's your response to that? I think that gets to the issue that was raised in the Martin case about whether this class of victims is legally deemed incapable of consenting. My response to that, I think the most direct response, is look at the Silva-Trevino case. In that case, it is dealing with strict liability sex crimes committed against children, which is certainly a more vulnerable class of victims than we have in this statute. And still, Silva-Trevino held that there must be a culpable mental state. The defendant must have known or should have known that the victim was in the protected class. So, yes, this is a vulnerable set of victims. Yes, there is a potential for coercion in any relationship between a defendant who falls within the statute and a victim who falls within the statute. But there still must be that essential element, as Silva-Trevino said, of mens rea, and it is just not in this statute. Didn't Deamey recognize the victim as someone who he had worked with? Mr. Deamey, on the facts presented here, Mr. Deamey did recognize that he had known the victim from his work at AHRQ. But under this court's precedent, in Jean-Louis, in Baptiste, Totemay, has been reaffirmed several times, the actual facts of the petitioner's conduct do not matter. What matters is the least culpable conduct that is hypothetically necessary to violate the statute. Do you agree that that's that the offender could have known that this person was in the protected class? I want to make sure I'm understanding the court's question. That it was under Silva-Trevino it's known or could have known. That's correct, Your Honor. So how do you deal with the second part of the could have known standard in this case? Because it's not an express requirement of the statute. It is not an element. So the jury was never charged. The model jury instructions for this crime do not charge that a jury has to find that the defendant knew or should have known. There could be a case of sort of mistaken identity where the defendant does not know that the victim falls within the statute. I think Mr. Deamey's specific facts show how this could happen easily. The victim was held to be detained under the statute even though she lived in an independent apartment. And Mr. Deamey and her first met and had their interaction on sort of public property that was not affiliated with the institution. As I mentioned, Your Honors, the BIA's own case law requires mental culpability. And the BIA has applied that a number of times. I just want to highlight the fact that this is the BIA's own case law creates a separate independent error in Mr. Deamey's case. Under well-established principles of agency law, the BIA was required to acknowledge and to distinguish its own precedent. Here it failed to acknowledge that precedent, simply ignored it, and in fact held contrary to it that mens rea does not matter. Isn't that really a legal issue? Do we have to give deference to the BIA on that? No, Your Honor. The court does not have to give deference here. And the court should not give deference to the BIA's opinion in this case because it's a single-judge opinion, not a decision by the full board. The point I'm just making is that since 2008, the BIA and the Attorney General has been clear that this is an essential element of the offense, of a CIMT analysis, and the BIA in this case deviated from that precedent without any explanation. That renders the BIA's decision arbitrary and capricious. Now, I think that that issue alone warrants the BIA's opinion to be vacated, for this case to be remanded. We do raise two other issues of error in our brief. The second legal error I wanted to touch on, Your Honor, is the BIA's holding that Mr. Deemy had committed a violent or dangerous offense under 8 CFR 12127D, which triggers a heightened showing of hardship that a petitioner has to meet in order to receive a waiver of inadmissibility. There's a threshold jurisdictional race here, Your Honor, namely whether this court has authority to review the BIA's interpretation of Section 12127D. It does. In all events, this court retains jurisdiction to review questions of law and constitutional claims. Here, the issue Mr. Deemy's petition for review is raising is a straightforward question of law. Talk to the merits of why this is a violent or dangerous crime. Sure. This was an error. The BIA's error was in holding that conduct that raises a risk of psychological harm can count as conduct that is violent or dangerous under the statute. Now, as the Supreme Court just reaffirmed in the Kaiser case last term, this court, when interpreting a regulation, uses the full interpretive toolkit that it normally uses. Look at the text, the purpose, the structure, the history of the regulation. Here, all of that points towards the phrase violent or dangerous, not referring to conduct that causes psychological harm. So, for example, if you just look at the structure of the text itself, violent or dangerous is a phrase that, when paired together, indicates that the attorney general had in mind physical or bodily harm, not psychological harm. Statutory terms gather meaning from the words around them. And by pairing dangerous with violent, again, that connotes physical harm. But with this statute protecting children, protecting inmates, protecting people under supervision, isn't it psychological harm? It really is one of the main concerns that the New Jersey legislature had in enacting the statute. I agree, Your Honor, that that was a motivating force for the New Jersey legislature's decision to criminalize this conduct. But I don't think that that should have any bearing on what the regulation means and what the phrase violent or dangerous means. We have not only the sort of plain text reading pointing towards bodily harm, we also have the fact that this regulation has never been interpreted in this way before. The phrase violent or dangerous comes from the In Re Gene case, where the attorney general looked at a very violent conduct and gave no indication in that opinion that he intended the phrase violent or dangerous to apply to conduct that... If I'm understanding you, you're saying violence must necessarily modify dangerousness. Let's say we agree with you that violence is ordinarily understood to mean some sort of physical threatening harm. Dangerousness clearly doesn't. So your argument is that violence subsumes dangerousness and kind of glosses over it with this idea of physicality? I don't think that the phrase violence would gloss over or subsume dangerous. The phrase dangerous would still be doing independent work under the regulation, I should say. So you can think of many examples of crimes that could be dangerous but not violent. For example, drunk driving, reckless endangerment, fleeing from the scene of an accident. Those are all examples of conduct that I think anyone would call dangerous conduct because of the risk of bodily injury, but not violent conduct because it doesn't have that level of intentionality that is typical when people use the phrase violent. But then wouldn't you say violent and dangerous? I just want to understand why it is that you wouldn't normally read this to say there's conduct that's violent, there's conduct that's dangerous, this falls into Category 2. You're saying it all has to fall into Category 1. How do you deal with the or in that clause? Because it doesn't all have to fall into Category 1. There is conduct that can be dangerous but not violent. I think a drunk driving offense would be a dangerous offense but not a violent offense. But the issue of whether psychological harm could be dangerous or violent, again, there is just no indication in any of the text meaning history of purpose. So you would say that the word dangerous, as ordinarily understood, couldn't encompass psychological harm? Well, in context it couldn't because when it is paired with violence, with the phrase violent, and when you have the canon of construction that words are known by the company they keep, again, the usage of the phrase dangerous gathers meaning from the usage of the phrase violent. Well, I mean, the point being we just had a case where we talked about severe being used in conjunction with pervasive and yet severe is different than pervasive. Here you have violent being used in conjunction with dangerousness and they're also separated by an or. Why can't they not be thought of separately rather than applying the canon of notion to our associates? Because, Your Honor, again, I think the court's interpretive toolkit as reaffirmed by the Supreme Court's decision in Kaiser requires it to look at all of the relevant factors, right? Not only the text but also the context and the history here. And I think it's telling, Your Honor, that this regulation has now been around for 20 years or so. I think the in regime case was decided in 2002 that the BIA or the government has failed to cite to a single case other than this case in which the phrase violent or dangerous has applied to conduct that only creates the risk of psychological harm. This was, as far as I can tell, the first case in which that has been held. On the very first question, whether they're under New Jersey law, there must be knowledge of the victim's status that is either under supervisory or disciplinary control. Has New Jersey case really responded to that? A case like Brian's doesn't necessarily deal completely with this issue. No, Your Honor, I'm not aware of any New Jersey authority that is directly saying one way or the other whether it is or it is not, but I will say, so for example, in Spann, in the intermediate appellate court giving rise to this New Jersey Supreme Court's decision in Spann, there is no indication that the defendant must know or should have known of the victim's status. Those cases dealt with by consent. Right, so this issue was not sort of factually presented before the court, but there is just not much authority on this issue, right? So what this court does under the categorical approach is look at the plain language of the statute. There simply is no mens rea requirement in the statute. Is this an issue that we should consider certifying to the New Jersey Supreme Court? I don't think so, Your Honor, because the statute seems quite clear. Also, the model jury instructions are quite clear. The jury instructions at Mr. Genie's trial were also clear. There was no requirement that the defendant know or should have known of the victim's status. It's interesting that those jury instructions the government relies on. Well, I think they rely on those jury instructions to point out, as we concede, that knowing conduct is required. You have to act knowingly. But that is different than having... But that's to which element? That is to his conduct, not to the victim's status. Why don't we hear from Ms. Braga and then we'll get back to the court. Your Honor. Thank you. May it please the Court, Victoria Braga appearing on behalf of the Attorney General. Can we start where we left off on the question of whether the New Jersey statute requires the offender to know that the victim is detained and under his supervisory or disciplinary control? Yes, our position is that the statute itself requires this sort of knowledge. As Petitioner acknowledges, the mens rea associated with the statute in general is knowingly, so the conduct, the penetration would have to be knowing. Looking at the statute, though, to respond to your specific question, the statute does provide that the offender needs to act within the scope of his professional position. I believe the statute itself says that the actor has supervisory or disciplinary power over the victim by virtue of the actor's legal, professional, or occupational status. That part of the statute shows that the New Jersey legislature was contemplating that an offender would know that he had supervisory or disciplinary power. I think we can expect people... But the point being, is this a matter... Your opposing counsel says he doesn't think certification would be apt here. Do you agree or disagree with that? As we've said in our brief, I think the statute, the case law, and the jury instructions show that the conduct here has to be knowing with regard to knowing that you have disciplinary or supervisory power over a victim. But if the court feels that certification to the New Jersey Supreme Court would be helpful to the decision of this case, then that is certainly a question that I think the New Jersey court would be in the best position to address. But should the court not certify? Again, I do think that looking at the statute and the statute's reference to the offense having to be committed with regard to the actor's legal, professional, or occupational status, we expect people to understand and to know what is entailed in their professional responsibilities. So that would include knowing that you had responsibility, in this case, if you were a mental health technician, over the patients in your care. As a per diem employee, did he have such supervisory control over her? Well, I think that is an issue that the court does not have jurisdiction over. That is something that was decided when he was convicted. It's an element of the statute. So before this court, we have to take the conviction as it stands and can't look behind the terms of it. So in being convicted, the jury who was involved in his trial found, based on the instructions of the judge, that he did, in fact, have supervisory or disciplinary control over his victim. In this case, the BIA has a case, Silva-Trevino. And yet, the BIA, in this case, the particular panel here, didn't even cite that when it concluded that the offenses similar to Deme's are crimes involving moral turpitude without any evidence of mens rea. But that's contrary to Silva-Trevino, isn't it? I'm not sure that the decision here is contrary to Silva-Trevino. Notably, Silva-Trevino does include a footnote. It's footnote 9, where the board leaves open the possibility that certain strict liability offenses, such as statutory rape, may qualify as crimes involving moral turpitude, despite being that the offense is strict liability, no mens rea requirement there. The Fourth Circuit has a case kind of criticizing that footnote, and the Fourth Circuit noted that in the case that they were deciding, I think it's Jimenez-Cedillo. But Silva-Trevino speaks directly to this issue, does it not? The question before us today. I'm sorry? Whether this is a crime involving moral turpitude. And Silva-Trevino dealt with what, an underage case? Silva-Trevino involved indecency with a child. And the question is, did the person know that the child was underage? Is that correct? I think that is correct, yes. And so, wouldn't that, by analogy, be pertinent here? I think this falls into the category of cases that Silva-Trevino is saying in the footnote may be different, in that this is a case that involves actual penetration. And in the Fourth Circuit case... The second element. Actual penetration plus that that person is within the supervisory or disciplinary control of the person engaging in the sexual act. Correct? Yes. And it's that second thing that we don't necessarily know what... It seems that Silva-Trevino would speak to that. You've got to know that that person is within your supervisory or disciplinary control or power. Right. And it would seem that the BIA needed to discuss that here, especially when it's the BIA's own precedent. Well, so I think that the BIA did rely on this court's opinion in Maboub and also... But Maboub is really just a deference case. We defer to the BIA. After Maboub, then the BIA changes its thinking. So we might still defer to the BIA, but the BIA's thinking here is what really controls. And it's different than the BIA's decisions that were extant when Maboub came down. Right. Maboub, I think, was decided in 2008. So Silva-Trevino is after that. But I do think that the footnote in Silva-Trevino, footnote 9, where the board says, We note, however, that our decision does not reach crimes commonly known as statutory rape. These are a distinct category of crimes that require the penetration of the child or similar conduct. Even though these offenses do not require a perpetrator to have knowledge of the age of the victim, we reserve the question whether they are crimes involving moral turpitude. Counselor, are you also agreeing that Maboub was solely a deference case? I don't think that Maboub is solely a deference case. I think that the court did do some analysis in Maboub of the statute in question. The court provided that conduct is morally turpitudinous when it targets a vulnerable victim who society seeks to protect. Also, more in line with this line of questioning, the court in Maboub said that strict liability morality offenses, like indecent assault, which was what was at issue in Maboub, are CIMTs because of the community consensus that such offenses, which are enacted for the protection of the child, are inherently antisocial and depraved. So I think the court is doing some analysis there, and I don't think that Silva-Trevino, especially by the footnote in Silva-Trevino, is rendering that analysis that the court has done outdated. So you're arguing that Maboub went further than merely deferring to the BIA.  Yes, I think Maboub did go further than that. We didn't hold in Maboub that the BIA's conclusion regarding, in that case, the Pennsylvania indecency statute, was the only reasonable conclusion. Wouldn't we have to hold so in order to conclude that somehow this decision binds the BIA under the Brand X Supreme Court decision? I'm sorry, can you repeat that question? Wouldn't we have to hold that the only reasonable way out was the conclusion that we had in the Maboub case? In other words, if the BIA changes its mind, and after Maboub, doesn't the BIA have to respect its own precedent, and we, in effect, are going to follow suit and defer to that in this case? And what I can't figure out is why the BIA didn't refer to its own precedent. Falling back on Maboub doesn't really seem to help very much when the case on which Maboub was deferring to is no longer the BIA's position. Right, I understand that. I think that, again, I do think that the court is doing some of its own analysis, although it is ultimately deferring to the BIA's conclusion in Maboub. And again, based on the footnote in Silva-Trevino, I'm not sure that the court or that the board here is adopting a new position that would require any sort of Brand X deference. I think that this case is different from the situation that was addressed in Silva-Trevino and the situation that Silva-Trevino expressly reserved question on. Granted, it doesn't involve a child, but it does involve penetration and a vulnerable class of victims, similarly to children. So I don't think that the board, given this footnote in Silva-Trevino, was deciding something that's contrary to Silva-Trevino. I don't think it was... If this were a modified categorical approach, I get where you're coming from. But we're stuck with the categorical approach, right, in this case, right? Yes, I don't think there's any argument that the statute's divisible in any way. And so what I don't know is, does New Jersey require knowledge of the second element, that is the supervisory or disciplinary control? Right, so we would point again to the statute, the terms of the statute. We'd also point to New Jersey case law. In no case in New Jersey does it seem that it would be a situation where the offender did not know. In Martin, the situation is a juvenile in a shelter with a shelter employee. In Spann, the individual was actually in Immigration and Customs Enforcement custody. Spann also says that consent, force, or threats are relevant to the analysis. But it says, given the nature of the crime, the only issue is intercourse. We would argue that the nature of the crime involves knowing that you are in this position with regard to the victim. And again, that's based on the statute. Does the conviction then make the conclusion that he does satisfy the scienter element that we're looking for now? Yes, that is our argument, that the conviction itself involves, in every case where a conviction results, it would involve a situation where the person knew the status of himself and of his victim in this sort of power imbalance relationship. We can look at the model jury instructions as well. There are several instances within the model jury instructions where it indicates that the state does not need to prove that the offender knew, it's usually the age of the victim. The model jury instructions here do not include that instruction, indicating that the state would have to prove or would have to offer some evidence showing that the victim, or that the offender knew the status of the victim. Jury instructions also direct jurors, as they're considering the relationship, to consider whether the defendant offered advice and guidance to the victim on questions and issues outside the defendant's role, however he's employed. So the jury instructions, I think, are directing jurors to find that this is a relationship that both parties were aware existed. It's not talking about a situation where it comes to light afterwards that this relationship existed. It is at the center of the statute. So based on that, the fact that the statute does require this knowledge, and the fact that, as we've argued in our brief, it is an implicitly non-consensual offense, we argue that it is categorically a CIMT, as the board found. I'd like to move on briefly. Yeah, if you could go to the second question. It's the sexual assault or violent or dangerous crime. Violent or dangerous crime. So first we'd argue, especially in response to this court's briefing notice several months ago, that there is no jurisdiction over this question. Under AUSC 1252A2B1. We do retain jurisdiction as to whether the BIA has applied the correct legal standard, do we not? Yes, the court would have jurisdiction over that issue. And here I think the petitioner's argument is that the standard was incorrectly applied. I mean, if you're saying, if Mr. Wilkenworth was saying that the BIA gave too little or too much weight to certain facts, that's no jurisdiction. But if we're saying, does violent or dangerous mean physical harm, or does it mean, can it also include psychological harm, that seems to be an issue of law. Right, so to the extent that the court has jurisdiction over that, I think it would be, the court would defer. This is the BIA interpreting its own regulations, so the court would apply a good deal of deference to deciding if the BIA had found correctly that Mr. Dini's offense qualified as a dangerous offense. We see no reason to assume that when the, that the regulations when they say violent or dangerous mean essentially violent or creating the risk of bodily injury. In Aduwu, which is an unpublished case of this court, the court cites a Ninth Circuit opinion, Mejia v. Gonzalez, in 2007 when it says, the heightened standard is rationally related to the immigration policy of not admitting aliens who would be a danger to society. So I think that's an indication that the court, or that the regulation does apply to dangerous, I see my time has expired. You're fine, go ahead. So I think that's an indication that the regulation is applying to dangerous offenses, and I think that this certainly is a dangerous offense. It is enacted to protect vulnerable victims of society. So Mr. Dini, by his commission of the offense, is not necessarily posing a violent risk toward anyone, but he is putting in danger society's most vulnerable victims. Okay. Any further questions? Thank you very much. Thank you. Thank you, Your Honors. Just a couple of points. First, on the issue of whether the statute requires the defendant to know of the victim's status, I heard counsel refer to the jury instructions several times. People's jury instructions are quite clear that they only require knowing conduct. The element of mens rea does not apply to any of the other elements in the jury charge. I also heard counsel refer to several times the circumstances or situations in which this statute is typically applied. Respectfully, that argument misunderstands this court's categorical approach, which doesn't look at the ordinary case or require a defendant or a petitioner, I should say, to identify some analogous case law or prosecution. It simply looks at what is hypothetically necessary to sustain the conviction under the statute. Here, the jury was never charged in Mr. Dini's case, and the model jury instructions never charge any jury with a finding that the defendant knew or should have known of the victim's status. And as to the issue of what does this statute mean under New Jersey law, the sexual assault statute includes a section, section A7, that does have an express requirement that the defendant knew or should have known of the victim's status. That section deals with victims who are mentally or physically incapacitated. There, the New Jersey legislator took an affirmative step to require proof that the defendant knew or should have known of the victim's status. That sort of an element, that sort of language is not present in Mr. Dini's statute of conviction. Showing that it was not intended to be part of that statute. Let me ask you, in your opinion, in the categorical approach, how realistic does the hypothetical need to be? I think it just has to be hypothetically possible. I think this court has said, in other cases, however remote. Instead of focusing on hypothetical conduct, I think it's helpful to focus on what was the jury charge given? What did the jury have to find? They did not have to find, in this case, or according to the model jury instructions, any case that the defendant knew of the victim's status. So, I actually think the hypotheticals that we have offered could easily arise, given the New Jersey court's treatment of a person being detained under the statute, even if they live independently. But again, what did the jury have to find? I do want to address, very quickly, footnote 9 in Silver Trevino. I would point this court to the Jimenez-Cedillo decision by the Fourth Circuit, which addressed footnote 9. As Jimenez-Cedillo said, all footnote 9 does is reserve the issue of whether the general rule about mens rea applies to statutory rape. Here, we don't have a statutory rape case. This is not a crime involving children. So, I don't even think footnote 9, by terms, applies. But the issue of reserving the decision is not the same as saying, well, this rule doesn't apply. As the Fourth Circuit said, the BIA would have to provide some reasoned analysis why the general rule doesn't apply in those circumstances. Here, we just don't have that. Thank you. Thank you to both counsel for very well-presented arguments. Mr. Mogamuth, thank you very much for you and your firm taking this matter on a pro bono basis. It's very much appreciated. And the work that the pro bono counsel does uniformly in this court is exceptional. There's no exception to how exceptional the work was here on both sides. Thank you very much.